FILED
CLERK, U.S. DISTRICT COURT
9/13/2023
CENTRAL DISTRICT OF CALIFORNIA
BY: ___TV___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2023 Grand Jury

| UNITED STATES OF AMERICA, | CR No. 2:23-cr-00456-SVW |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 371: Conspiracy; 18 U.S.C. § 666(a)(2): Bribery Concerning Programs Receiving Federal Funds; 18 U.S.C. §§ 1343, 1346: Honest Services Wire Fraud; 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| ISAAC JACOB GALVAN and YICHANG BAI, | |
| Defendants. | |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

A. THE CITY OF BALDWIN PARK

1. The City of Baldwin Park, California, was a local government located in Los Angeles County, within the Central District of California. Baldwin Park received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other forms of Federal assistance in each of the calendar years in 2017, 2018, and 2019.

2. Baldwin Park was governed, in part, by its City Council, which adopted legislation, set policy, adjudicated issues, and established the budget for the city.

3. The City Council was comprised of four City Council members and a Mayor, all of whom were elected at large by Baldwin Park's registered voters.

B. MARIJUANA PERMITS IN BALDWIN PARK

4. On November 8, 2016, voters in the State of California passed Proposition 64, which legalized marijuana for recreational purposes.

5. On June 5, 2017, Baldwin Park announced in a press release that "[m]onths after California voters passed legislation regarding the use of cannabis, local officials are exploring economic development opportunities pertaining to the indoor cultivation, testing or manufacture of medical cannabis products in Baldwin Park."

6. On August 16, 2017, the City Council approved a permitting plan to allow for the legal cultivation, manufacture, and distribution of cannabis in Baldwin Park. Shortly thereafter, Baldwin Park began accepting applications for development agreements ("marijuana permits").

7. As part of the permitting process, Baldwin Park staff reviewed marijuana permit applications, but final approval rested with the City Council. The City Council also had to approve applications for a marijuana permit to relocate its operations.

C. RELEVANT PERSONS AND ENTITIES

8. Defendant ISAAC JACOB GALVAN was a Councilmember for the City of Compton, California, a local government in Los Angeles County. From 2013 through May 2022, defendant GALVAN represented

Compton's Second District.  In 2016, defendant GALVAN ran to become a state senator representing California's State Senate District 35 but lost in the primary election.

9.   Defendant YICHANG BAI was the director of W&F International Corp. ("W&F") and ran W&F's day-to-day operations.

10.  Co-conspirator Ricardo Pacheco was first elected to the Baldwin Park City Council in 1997 and held that elected position until 2020.  He also previously served as Baldwin Park's Mayor Pro Tempore.  In both roles, Pacheco was an agent of Baldwin Park.

11.  As a public official employed by Baldwin Park, Pacheco owed a fiduciary duty to the citizens of Baldwin Park to perform the duties and responsibilities of his office free from bribery, kickbacks, fraud, deceit, bias, conflicts of interest, self-enrichment, self-dealing, and concealment.

12.  Co-conspirator Person 1 was the City Attorney for Baldwin Park from in or around December 2013 until October 2022.  In this role, Person 1 was an agent of Baldwin Park.

13.  Person 28 was an associate of defendant BAI who served as his translator and communicated frequently with defendant GALVAN in connection with W&F's pursuit of a marijuana permit in Baldwin Park.

14.  W&F was a corporation originally formed in January 2014 as an import and export business.  In 2017, W&F applied for a marijuana permit in Baldwin Park, which it ultimately received in July 2018. W&F had a Bank of America account ending in 8212 ("W&F Bank of America Account").

15.  I&I, LLC ("I&I") was a limited liability corporation Person 1 formed for defendant GALVAN in October 2016.  Defendant GALVAN owned and operated I&I, even though his name did not appear in

the articles of organization filed publicly with the California Secretary of State's office.  On July 27, 2017, defendant GALVAN opened an account at Wells Fargo Bank in the name of I&I ("I&I Wells Fargo Bank Account").  Defendant GALVAN held out I&I as a consulting business, and defendant GALVAN used it to solicit work as a "consultant" from companies seeking marijuana permits in Baldwin Park and elsewhere, including from W&F.  In truth, defendant GALVAN used I&I to solicit bribes for officials and to facilitate paying those bribes.

16.  These Introductory Allegations are incorporated by reference into each count of this Indictment.

COUNT ONE

[18 U.S.C. § 371]

[ALL DEFENDANTS]

A. OBJECTS OF THE CONSPIRACY

17. Beginning on a date unknown and continuing until in or around February 2019, in Los Angeles County, within the Central District of California, defendants ISAAC JACOB GALVAN and YICHANG BAI, and co-conspirators Pacheco and Person 1, conspired with each other, and others known and unknown to the Grand Jury, to knowingly and intentionally commit offenses against the United States, namely, bribery concerning programs receiving federal funds, in violation of Title 18, United States Code, Section 666(a)(2), and wire fraud, including through the deprivation of honest services of a Baldwin Park official, in violation of Title 18, United States Code, Sections 1343, 1346.

B. MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

18. The objects of the conspiracy were to be accomplished, in substance, as follows:

  a. Defendants GALVAN and BAI would give, offer to give, and agree to give payments to Baldwin Park City officials, including $70,000 to Pacheco, intending to influence and reward Pacheco.

  b. In exchange for accepting those payments from defendants GALVAN and BAI, Pacheco would agree to perform official acts, including, among others, voting on W&F's marijuana permit application and its later application to relocate its operations in Baldwin Park.

   c. Defendants GALVAN and BAI would take steps to disguise, conceal, and cover up the bribes and kickbacks to Pacheco by: (1) concealing the official acts Pacheco agreed to perform and performed in exchange for payments from defendants GALVAN and BAI; (2) having defendant BAI collect checks from sources other than defendant BAI and W&F in order to disguise the true source of payment; and (3) using an intermediary to convert the bribe payments to cash after Pacheco received the bribes and kickbacks from defendant GALVAN.

C. <u>OVERT ACTS</u>

  19. In furtherance of the conspiracy and to accomplish the objects of the conspiracy, on or about the following dates, defendants GALVAN and BAI, and others known and unknown to the Grand Jury, committed and caused to be committed various overt acts within the Central District of California, and elsewhere, including the following:

  <u>Overt Act No. 1</u>: On August 7, 2017, defendant GALVAN provided Pacheco at least one $10,000 check from his I&I Wells Fargo Bank Account with a blank payee line.

  <u>Overt Act No. 2</u>: On August 7, 2017, Pacheco provided the check to Person 11, a commercial real estate agent and friend of Pacheco's brother, with Person 11's name written in the payee line.

  <u>Overt Act No. 3</u>: On August 7, 2017, Person 11 deposited the $10,000 check into Person 11's American First Credit Union account.

  <u>Overt Act No. 4</u>: Over four transactions from August 10, 2017 through August 21, 2017, Person 11 withdrew a total of approximately $6,400 in cash, which Person 11 then provided to Pacheco.

      Overt Act No. 5:   On September 6, 2017, after gathering a list of the names of applicants for marijuana permits from Baldwin Park staff and the names of the individuals associated with those applications, Person 1 forwarded this internal city information to defendant GALVAN.

      Overt Act No. 6:   On November 12, 2017, at Pacheco's request, defendant GALVAN provided Pacheco a $2,500 donation from his I&I Wells Fargo Bank Account to Pacheco's wife's political campaign.

      Overt Act No. 7:   On November 17, 2017, defendant GALVAN met with Person 28 to discuss providing defendant GALVAN's consulting services to W&F in connection with its pursuit of a marijuana permit in Baldwin Park.

      Overt Act No. 8:   On November 21, 2017, defendant GALVAN received a check from the W&F Bank of America Account made payable to I&I for $40,000.

      Overt Act No. 9:   On November 24, 2017, defendant GALVAN deposited a $40,000 check from the W&F Bank of America Account into the I&I Wells Fargo Bank Account.

      Overt Act No. 10:   On November 30, 2017, defendant GALVAN acknowledged facilitating a meeting between defendant BAI, Person 28, and Person 1 at Person 1's office regarding the marijuana permit for W&F.  Following the meeting, defendant GALVAN texted Person 28: "See I don't fuck around."

      Overt Act No. 11:   On December 12, 2017, Person 19, Person 1's friend, sent defendant GALVAN an email at Person 1's request with two "Consulting Services Agreements" attached.  Person 19 said, "Isaac, Good afternoon[,] Please, if possible, get your clients to sign these agreements ( see attached ) and if possible, return them to me

today."  One of the attached contracts was a "Consulting Services Agreement" between W&F and Consulting Company 4, which Person 19 owned.  This contract listed an effective date of August 27, 2017 and called for Consulting Company 4 to receive $225,000 once Baldwin Park issued W&F its marijuana permit.

<u>Overt Act No. 12:</u>  On December 13, 2017, during a text message exchange between defendant GALVAN and Person 28, defendant GALVAN asked Person 28 for "2 things [to be] signed before tonight" and explained that one is his "agreement" and that the "other is one that was thrown at me yesterday."  Person 28 asked defendant GALVAN to email the "things" to be signed to Person 28.

<u>Overt Act No. 13:</u>  On December 13, 2017, defendant GALVAN sent an email to Person 28 attaching the same "Consulting Services Agreement" between Consulting Company 4 and W&F that defendant GALVAN had received a day earlier from Person 19.

<u>Overt Act No. 14:</u>  On December 13, 2017, Person 28 forwarded the email with the "Consulting Services Agreement" from defendant GALVAN to defendant BAI.

<u>Overt Act No. 15:</u>  On December 14, 2017, during a text message exchange between defendant GALVAN and Person 28, Person 28 told defendant GALVAN that defendant BAI wanted to meet and sent an image of the signature page from the Consulting Services Agreement defendant GALVAN sent to Person 28 the day before.  The signature page had defendant BAI's signature.  Person 28 also told defendant GALVAN that "[t]he original [contract] will be give[n] to you when I see you tonight."  Defendant GALVAN responded, "Ok" and confirmed their meeting for that day.

Overt Act No. 16:  On December 14, 2017, defendant GALVAN, defendant BAI, Person 28, and others met and agreed upon the terms of defendant GALVAN's consulting arrangement, including that defendant BAI would only provide defendant GALVAN payment in the form of checks from individuals other than defendant BAI or W&F.

Overt Act No. 17:  On December 20, 2017, two days after the City Council did not to approve W&F's marijuana permit application, Person 28 asked defendant GALVAN via text message if "there is still hope for" W&F's marijuana permit, and defendant GALVAN replied "Yes of course."

Overt Act No. 18:  On June 20, 2018, during its first reading before the City Council, Pacheco voted in favor of W&F's marijuana permit application, which indicated that W&F would be located on Elton Street in Baldwin Park ("Elton Street Address").  The City Council voted in favor of W&F's marijuana permit application by a vote of 4 to 1.

Overt Act No. 19:  On July 18, 2018, during its second and final reading before the City Council, Pacheco voted in favor of W&F's marijuana permit application for the Elton Street Address.  The City Council voted in favor of W&F's marijuana permit application by a vote of 4 to 1.

Overt Act No. 20:  On July 19, 2018, a day after the City Council approved W&F's marijuana permit, defendant GALVAN sent Pacheco two text messages asking if he "[w]ant[ed] to have a cigar" and then suggested "Havana house in Alhambra."

Overt Act No. 21:  On August 27, 2018, defendant BAI signed a lease for W&F to operate its marijuana business on Littlejohn Street

in Baldwin Park ("Littlejohn Address"), a relocation that would require further City Council approval.

Overt Act No. 22: On September 12, 2018, defendant BAI requested and received from Person 12, an individual who owed defendant BAI money, $100,000 in checks. At defendant GALVAN's instruction, defendant BAI requested that Person 12 write one check for $50,000 and five checks for $10,000 each, and instructed Person 12 to leave the payee lines blank.

Overt Act No. 23: On September 12, 2018, defendant BAI met with defendant GALVAN and delivered the $50,000 check from Person 12's Chase Bank account ending in 8633 ("Person 12's Chase Account") and five $10,000 checks from Person 12's Bank of America account ending in 9961 ("Person 12's Bank of America Account"). When defendant BAI delivered the checks to defendant GALVAN, none of the checks had payee information.

Overt Act No. 24: On September 14, 2018, defendant GALVAN provided Person 1 the five $10,000 checks from Person 12's Bank of America Account for Person 1 to arrange to have cashed. Person 1 agreed to do so provided Person 1 could keep $6,000. The payee line on all the checks was blank when Person 1 received them.

Overt Act No. 25: On September 14, 2018, Person 1 gave Person 29, a relative of Person 1, the five $10,000 checks from Person 12's Bank of America Account and asked Person 29 to cash them. At the time, the payee line on all the checks was blank.

Overt Act No. 26: On September 18, 2018, after receiving two of Person 12's $10,000 checks from Person 29, Person 30, a friend of Person 29, deposited the two $10,000 checks into his Chase Bank account and later provided at least $18,400 in cash to Person 29.

Overt Act No. 27: On September 19, 2018, after receiving one of Person 12's $10,000 checks from Person 29, Person 31, a friend of Person 1 and Person 29, deposited the check into Person 30's Wells Fargo Bank account ending in 1485 and later withdrew $10,000 in cash, which Person 31 provided to Person 29.

Overt Act No. 28: On September 20, 2018, after receiving two of Person 12's $10,000 checks from Person 29, Person 31 deposited one check into Person 31's Wells Fargo Bank account ending in 1485 and one check into Person 31's Vantage West Credit Union account ending in 8255. Person 31 later withdrew $20,000 in cash from both accounts, which Person 31 provided to Person 29.

Overt Act No. 29: On September 20, 2018, defendant GALVAN gave Pacheco the $50,000 check from Person 12's Chase Bank Account. The check at the time had a blank payee line.

Overt Act No. 30: On September 21, 2018, Pacheco gave the $50,000 check from Person 12's Chase Bank Account to Person 13, a friend of Pacheco's, and asked Person 13 to provide cash back from $50,000 check to Pacheco.

Overt Act No. 31: On September 21, 2018, Person 13 deposited the check into Person 13's company's Wells Fargo Bank Account ending in 9377 and, in the months that followed, provided a portion of the $50,000 check in cash back to Pacheco.

Overt Act No. 32: On September 26, 2018, W&F submitted an application to change W&F's location to the Littlejohn Address.

Overt Act No. 33: On December 5, 2018, during its first reading at the City Council, Pacheco voted in favor of W&F's application to relocate to the Littlejohn Address. The City Council voted in favor of W&F's application to relocate by a vote of 5 to 0.

11

<u>Overt Act No. 34</u>:  On December 19, 2018, during its second reading at the City Council, Pacheco voted in favor of W&F's application to relocate to the Littlejohn Address.  The City Council voted in favor of W&F's application to relocate by a vote of 5 to 0.

<u>Overt Act No. 35</u>:  On January 23, 2019, Pacheco sent an email to defendant GALVAN regarding a fundraiser for Pacheco's legal defense fund.

<u>Overt Act No. 36</u>:  On January 23, 2019, at defendant GALVAN's request, defendant BAI gathered five $3,000 checks and two $2,500 checks, all from different bank accounts.  At defendant GALVAN's request, defendant BAI obtained $20,000 in checks with blank payee lines.  None of the checks came from a bank account on which defendant BAI or W&F were listed.

<u>Overt Act No. 37</u>:  On January 23, 2019, defendant BAI delivered, or arranged to be delivered, the seven checks totaling $20,000 to defendant GALVAN.

<u>Overt Act No. 38</u>:  On January 24, 2019, defendant GALVAN provided the seven checks totaling $20,000 to Pacheco.

<u>Overt Act No. 39</u>:  On January 30, 2019, Pacheco deposited one of the $3,000 checks defendant GALVAN had given him on or about January 24, 2019 into his legal defense fund account ending in 5279 at SCE Federal Credit Union ("Pacheco's SCE Federal Credit Union Account").

<u>Overt Act No. 40</u>:  On February 4, 2019, Pacheco deposited the remaining six checks totaling $17,000 that defendant GALVAN had given him on or about January 24, 2019 into Pacheco's SCE Federal Credit Union Account.

<u>Overt Act No. 41</u>:   On February 21, 2019, defendant GALVAN invited Person 28 to use Signal, a secure end-to-end encrypted messaging application.

COUNT TWO

[18 U.S.C. §§ 666(a)(2), 2(a)]

[ALL DEFENDANTS]

20. Beginning on a date unknown and continuing to in or around February 2019, in Los Angeles County, within the Central District of California, defendants ISAAC JACOB GALVAN and YICHANG BAI, each aiding and abetting each other, corruptly gave, offered, and agreed to give something of value to a person, namely, $70,000, intending to influence and reward co-conspirator Ricardo Pacheco, an agent of the City of Baldwin Park, in connection with a business, transaction, and series of transactions of the city having a value of $5,000 or more, specifically, the city's approval and awarding of marijuana permits.

COUNTS THREE THROUGH TEN

[18 U.S.C. §§ 1343, 1346, 2(b)]

[ALL DEFENDANTS]

A.  THE SCHEME TO DEFRAUD

21.  Beginning on a date unknown and continuing to in or around February 2019, in Los Angeles County, within the Central District of California, and elsewhere, defendants ISAAC JACOB GALVAN and YICHANG BAI, together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud the citizens of the City of Baldwin Park of their right to the honest services of Pacheco by means of bribery, kickbacks, materially false and fraudulent pretenses, and the concealment of material facts.

B.  MEANS AND METHODS OF THE SCHEME TO DEFRAUD

22.  The scheme to defraud operated, in substance, in the following manner and by the following means:

   a.  Defendant GALVAN would offer bribes and kickbacks gathered by defendant BAI in the form of checks from other co-schemers and individuals.

   b.  In exchange for the bribes and kickbacks from defendant GALVAN, defendant BAI, co-schemers, and other individuals, Pacheco would agree to perform official acts, namely, voting in favor W&F's marijuana permit application and application to relocate to the Littlejohn Address, and to exert pressure on another official to perform an official act, or to advise another official, knowing or intending that such advice will form the basis for an official act, namely, voting on W&F's marijuana permit application and its application to relocate to the Littlejohn Address.

c.  Defendants GALVAN and BAI and their co-schemers would conceal their scheme and operate their scheme through materially false and fraudulent pretenses by: (1) concealing bribes and kickbacks offered and given by defendant GALVAN to Pacheco by having defendant BAI collect checks from sources other than defendant BAI and W&F in order to disguise the true source and nature of the payment; (2) using an intermediary to convert the bribe payments to cash after Pacheco received the bribes and kickbacks from defendant GALVAN; and (3) concealing material facts, including but not limited to, the fact that Pacheco received bribes and kickbacks from defendants GALVAN and BAI and that the true source of the bribes and kickbacks was defendant BAI.

C.  USE OF WIRES

23.  On or about the dates set forth below, within the Central District of California, and elsewhere, defendants GALVAN and BAI, for the purpose of executing the above-described scheme to defraud, transmitted and caused the transmission of the following items by means of a wire communication in interstate commerce:

| COUNT | DATE | WIRE |
|---|---|---|
| THREE | September 21, 2018 | Bank wire transfer of $50,000 from Person 12's Chase Bank Account into a Wells Fargo Bank Account ending in 9377 processed through servers located in Alabama. |
| FOUR | January 30, 2019 | Bank wire transfer of $3,000 from a First Choice Bank Account ending in 1458 into Pacheco's SCE Federal Credit Union Account processed through servers located in Kansas. |

16

| COUNT | DATE | WIRE |
|-------|------|------|
| FIVE | February 5, 2019 | Bank wire transfer of $3,000 from a Chase Bank Account ending in 0493 into Pacheco's SCE Federal Credit Union Account processed through servers located in Kansas. |
| SIX | February 5, 2019 | Bank wire transfer of $2,500 from a Chase Bank Account ending in 3221 into Pacheco's SCE Federal Credit Union Account processed through servers located in Kansas. |
| SEVEN | February 5, 2019 | Bank wire transfer of $2,500 from a Chase Bank Account ending in 3626 into Pacheco's SCE Federal Credit Union Account processed through servers located in Kansas. |
| EIGHT | February 5, 2019 | Bank wire transfer of $3,000 from a East West Bank Account ending in 7600 into Pacheco's SCE Federal Credit Union Account processed through servers located in Kansas. |
| NINE | February 5, 2019 | Bank wire transfer of $3,000 from an East West Bank Account ending in 1298 into Pacheco's SCE Federal Credit Union Account processed through servers located in Kansas. |
| TEN | February 5, 2019 | Bank wire transfer of $3,000 from a Chase Bank Account ending in 7717 into Pacheco's SCE Federal Credit Union Account processed through servers located in Kansas. |

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

24. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts One through Ten of this Indictment.

25. Any defendant so convicted shall forfeit to the United States of America the following:

(a) all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

///

///

```
 1  substantially diminished in value; or (e) has been commingled with
 2  other property that cannot be divided without difficulty.
 3
 4                                          A TRUE BILL
 5
 6                                               /s/
                                            _____
 7                                          Foreperson

 8  E. MARTIN ESTRADA
    United States Attorney
 9
10  [signature]
11  MACK E. JENKINS
    Assistant United States Attorney
12  Chief, Criminal Division

13  LINDSEY GREER DOTSON
    Assistant United States Attorney
14  Chief, Public Corruption
    and Civil Rights Section
15
    CASSIE D. PALMER
16  Assistant United States Attorney
    Deputy Chief, Public Corruption
17  and Civil Rights Section

18  THOMAS F. RYBARCZYK
    Assistant United States Attorney
19  Public Corruption and Civil
    Rights Section
20
    MICHAEL J. MORSE
21  Assistant United States Attorney
    Public Corruption and Civil
22  Rights Section

23
24
25
26
27
28
                                     19
```